[Civ. No. 15363.   Second Dist., Div. Three.   Dec. 31, 1946.]

FRANK J. TENNANT, Respondent, v. THE CIVIL SERVICE COMMISSION OF THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, George William Adams, John F. Feldmeier and T. Paul Moody, Deputy City Attorneys, for Appellants.

George E. Cryer and R. Alston Jones for Respondent.

WOOD, J.—This is an appeal from a judgment ordering that a writ of mandamus issue requiring the Civil Service Commission of the City of Los Angeles to accord petitioner a full and fair hearing on charges made against him by the Department of Water and Power as grounds for his discharge as a civil service employee of that department. The Civil Service Commission will be referred to as the commission, and the Department of Water and Power will be referred to as the department.

On August 8, 1944, the petitioner, who had been employed in the classified civil service in the department about 20 years, was served with a copy of a written notice which the department had given to the commission informing it that the department had on that day discharged petitioner from his position as a machine shop foreman. The causes for his discharge therein specified were: that "he was regularly paid by and accepted from the United Tool and Manufacturing Company a gratuity of $25 per week" during a time when the department was doing work for said company, which work was under the immediate supervision of petitioner; that he lent to said company and others various tools,

equipment and other property belonging to the department; that he was negligent in permitting practices to exist in those portions of the shop under his control, which practices resulted in the use without charge of department-owned materials in work done in said shops for said company and for others.

On August 11, 1944, petitioner filed with the commission a written denial of the charges, demanded an investigation and a hearing, permission to submit evidence, and demanded that he be reinstated and paid his salary from the time of the "unlawful discharge or removal." On August 15, 1944, the commission referred said demand to the staff of the commission for investigation. Thereafter the general manager of the commission investigated the charges.

Petitioner was duly notified that the charges against him would be considered by the commission at its meeting on September 12, 1944, and at such meeting on that date the petitioner and two attorneys representing him were present. At that time the general manager read his report of the investigation, and filed the report with the commission. The report included an affidavit of petitioner and 14 letters filed by petitioner in his own behalf, which affidavit and two of the letters were read at that time. Also read was part of a transcript of a shorthand report of an interview which a deputy city attorney had had with petitioner on August 2, 1944. The transcript of that interview, consisting of 50 pages, was filed as an exhibit in the proceeding.

The part of the interview between the deputy city attorney and petitioner which was read before the commission in the presence of petitioner showed that he admitted receiving $25 a week for a year or more from the United Tool Company. His answers given therein, concerning the reason the money was paid to him, were indefinite. Some of such answers were: "Well, I could not say. After all they just paid it to me, see. I did not ask them," and, "Well, he told me, Mr. Haney told me he was going to give me a little check for —to kind of compensate me for what I was doing for them in the way of helping out."

At this meeting petitioner did not deny that he received the money, but asserted, as a defense, that he was paid the $25 per week by the private company for work he did on his own time; further, that he was not responsible for the practices in the shops of the department which resulted in the mis-

use of tools and material for the benefit of private companies.

The reading of the report was interrupted from time to time by members of the commission in order to ask the petitioner questions. One of such questions was: "How could you do this extra work in other places other than on City property? Did you do it at home or right on the City property, the work for which you were paid the $25.00?" His answer was, "I was working mostly in an engineering capacity. If you have gone through my reports there, you will find I have done a good deal of that work for the Department." Another such question was: "Were any of these superiors aware of the fact that you were receiving this $25.00 weekly, and that you were providing tools of the Department for the outside jobs, and also providing the outside jobs with some scrap material?" His answer was: "Mr. Flemming would be the only one who would know about it, but I didn't tell him about it. If he knew he would get his information from United Tool or somebody, as he was interested in the Company." After the reading from the report and after the report had been filed, a commissioner asked petitioner if there was anything he could add to the report, and petitioner said: "I believe you have my affidavit there that I would like to have read, and then if there are any questions you would like to ask me, I would be willing to answer them in regard to any of the work done down there, or regarding the loan of tools and material." Petitioner made statements personally in his own interest, his two attorneys made arguments in his behalf, and the deputy city attorney also presented an argument. The commission took the matter under submission and on January 2, 1945, found that grounds for the discharge, as stated in the notice, were sufficient and were sustained, and approved the discharge. On January 3, 1945, petitioner received notice of this confirmation of his discharge.

■ Appellants contend that petitioner's application for a writ of mandate is barred by section 112½ of the charter of the city of Los Angeles in that petitioner did not file with the commission a demand for reinstatement within 90 days from the date of his alleged unlawful discharge.

That section provides, in part: "Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must

be presented in writing within 90 days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. . . . Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement.''

Petitioner did not file a demand for reinstatement or a claim for compensation that complied with the requirement of section 112½. He did file with the commission a demand for reinstatement and for compensation on August 11, 1944, as above stated, but that was before the commission had sustained the action of the department. It was stated in *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716, at page 720 [160 P.2d 816]: ''The only reasonable interpretation of the foregoing provisions of the charter [referring to section 112½] is that the written demand must be filed as required by section 112½ within 90 days after the order of the board sustaining the action of the department.'' Petitioner's demand herein was, as found by the trial court, premature and of no effect. It was held in the Steen case that any claim of the employee for relief when the department first files its notice of discharge is made to the commission pursuant to procedure in section 112(a) and that such a claim for relief is the preliminary step for action by the commission; that the demand by the employee for reinstatement under section 112½ is the preliminary step to seeking judicial relief. Petitioner, without filing any demand for reinstatement or for compensation after the commission made its order sustaining his discharge by the department, filed this action on November 15, 1945, more than 10 months after the commission made its order sustaining the discharge. As provided in section 112½ above quoted, the filing of such a demand for reinstatement is a condition precedent to the maintenance of any action for reinstatement.

Petitioner contends that he is not seeking to be reinstated by this action or to be paid compensation, but merely to require appellants to accord him a hearing; and that therefore section 112½ does not apply. In support of said contention, petitioner argues that he may not be discharged without being accorded a full and fair hearing; that a proceeding to remove him has been filed but has never been completed; and

that he merely seeks a hearing in order that the administrative process may be completed.

After the decision of the commission sustaining the discharge, petitioner apparently considered the matter closed and continued to so consider it until after the decision in the case of *La Prade* v. *Department of Water & Power*, 27 Cal.2d 47 [162 P.2d 13], was rendered on October 1, 1945, holding that the employee was entitled, under certain conditions, to a hearing before the commission. The petitioner herein having failed to perform a condition precedent to maintaining an action to compel reinstatement, namely, to demand reinstatement within the time provided by law, and having concluded, apparently since the La Prade case decision, that he had not had a hearing before the commission, commenced this action on the theory that he was seeking only a hearing before the commission and was not seeking reinstatement. His argument, in support of that theory, is that since he had not had a hearing he had not been lawfully discharged, and therefore that the requirement that he should demand reinstatement within 90 days after his discharge, as a condition precedent to maintaining an action for reinstatement, is not applicable since he had not been discharged and is still an employee. It would seem, under such argument, that if any error occurs in a proceeding before the commission, which proceeding results in sustaining the discharge of an employee, he would not be lawfully discharged, and therefore the time limit of 90 days for demanding reinstatement, prior to action for judicial relief, would have no application and he could seek judicial relief, other than reinstatement, at any time thereafter. Such argument is based upon the fallacious premise that a discharge as a matter of fact cannot exist unless such discharge was made in a lawful manner. If there could be no discharge as a matter of fact unless the discharge was made as provided by law, it would follow as a necessary conclusion that there could be no unlawful discharge. If there could be no unlawful discharge there would be no basis for the provision in said section 112½ requiring the filing of a demand for reinstatement within 90 days "Whenever it is claimed by any person that he has been *unlawfully* suspended, laid off or *discharged*," and the section would be meaningless. (Italics added.) The action of the commission in sustaining the discharge of an employee is a discharge of the employee effective until the action is set aside, even though the commission erred in matters of procedure or

in the action taken. Petitioner's contention that he was not discharged by the action of the commission is not sustained. It appears therefore that his action is necessarily based upon the premise that he was unlawfully discharged, and that he is subject to the provisions of section 112½ requiring a demand for reinstatement by one who claims he was unlawfully discharged.

Although petitioner asserts that this action is merely to obtain a hearing before the commission, and although by this action he does not ask the court to reinstate him, it appears that his action is a preliminary step in a design to accomplish his reinstatement upon a further proceeding before the commission, or to so revive his efforts for reinstatement before the commission that he could, if there should be another adverse decision by the commission, make a timely demand for reinstatement as required by section 112½ and then seek reinstatement directly by the court. In other words, it appears that reinstatement is the ultimate object of the petitioner. If it were not so, and if the object of the action were solely to obtain a hearing in order that the administrative process might be completed, without the intention of petitioner to secure reinstatement, no beneficial purpose would be served by the relief sought and the issue would be purely academic, and for that reason it should not be considered by the court. It appears that his action is necessarily based upon an attempt to obtain reinstatement, and that he is subject to the provisions of section 112½ requiring a demand as a condition precedent to maintaining the action.

The provisions of section 112½ are not to be construed as meaningless, under the contentions of petitioner above mentioned. They are for the useful purpose of fixing a time limit and the formalities necessary as a basis for a court action after the commission has sustained the discharge of an employee. If a discharged employee claims that the commission erred in matters of procedure or even in failing to have a hearing, the commission should be given an opportunity to grant a rehearing or a hearing prior to an action by the discharged employee for judicial relief. As stated by the Supreme Court in the Steen case, *supra* (p. 722), "The demand [referring to demand for reinstatement] may be somewhat analogous to the requirement of a petition for a rehearing addressed to the board. The board is given an additional opportunity to pass upon the issue before resort is had to the

courts.'' Since the extent of judicial relief under circumstances where a hearing has not been had is to order a hearing before the commission (*La Prade* v. *Department of Water & Power, supra*) a proper interpretation of section 112½ is that it requires, as a condition precedent to maintaining any action necessarily based upon the premise that a person has been unlawfully discharged and therefore should be reinstated, that a demand for reinstatement be filed with the commission within 90 days after its order sustaining the discharge, even if the commission in so acting failed to hold a hearing. Having failed to make such a demand, this action is barred by the provisions of said section.

Appellants assert that petitioner was given a hearing as to the charges against him. He was given notice of the meeting, and he and his two attorneys were present. (The attorneys who represented him before the commission are not the attorneys who represent him in this action.) The transcript of the proceeding before the commission covers 29 pages, exclusive of the general manager's report, the transcript of the shorthand report of the prior interview with petitioner, his affidavit, and the letters. The report of the general manager reciting facts sufficient to sustain the discharge was read in petitioner's presence and in the presence of his attorneys, and was made available for his consideration. Also a transcript of a shorthand report of an interview between a deputy city attorney and petitioner was read and filed as an exhibit. Petitioner admitted that he received the money from a private company, but claimed it was for work done on his own time. He did not contend that tools and materials were not misappropriated, but asserted that he did not misappropriate anything and that he was not responsible for any misappropriation by others. He was the foreman of the shop where work was being done by the department for the private company. He was questioned at length by the commissioners, asked if he could add anything to the report, and was given a full opportunity to present a defense and to refute, test and explain the evidence against him. He made statements in his own behalf, and his two attorneys made arguments for him. As above stated, he did not demand reinstatement within 90 days after the charges were sustained, and did nothing at all concerning the adverse decision until more than 10 months thereafter when he commenced this action.

Petitioner contends that the proceeding did not constitute a hearing because no witnesses were examined, no evidence was received, and no proof was made of any fact involved in the charge. His argument is that an oath was not administered to anyone and no statements under oath were taken, and that the report was not introduced in evidence.

■ As to the oath not being administered, petitioner did not object to the manner in which the proceeding was conducted, and did not object to statements being made which were not under oath. Permitting a person to testify without being sworn is not a jurisdictional matter but is at most a judicial error which cannot be taken advantage of except upon timely objection being made. (*Trigueiro* v. *Skow*, 24 Cal.App.2d 253, 256 [74 P.2d 836] ; *People* v. *Duffy*, 110 Cal. App. 631, 635 [294 P. 496].) His own affidavit, of course, was properly considered. ■ It is to be remembered that he admitted that he received the $25 per week, and that it was not disputed that tools and material of the department, in the shop where he was foreman, were used by the private company which paid him the money. The only controversy related to explanations advanced by him as to the reason the money was paid to him, and as to his nonresponsibility for misuse of the tools and material. Of course, he is not in a position to contend that there was no hearing because his statements given as explanations before the commission were not under oath. Since the evidence against him as to receipt of the money and the use of the tools and material was not in dispute, the matter of receiving statements not under oath concerning those undisputed facts was not prejudicial to him. The cases relied upon by him relating to the necessity for testimony to be given under oath are not applicable here, since the reason for such safeguard does not exist under the peculiar facts of this case, particularly in view of the undisputed points above mentioned.

■ As to the report not being introduced in evidence, no objection was made as to the procedure in connection with it. It was read by the one who made it, in the presence of petitioner and his attorneys, and was filed with the commission. The maker of it was there, available for cross-examination, and presumably could have been placed under oath if the petitioner had requested it. Petitioner did not deny the statements therein.

■ As to the transcript of the interview between the deputy city attorney and petitioner not being introduced in evi-

dence, no objection was made as to the procedure in connection with it. It was filed as an exhibit, but the specific words "introduce it in evidence" were not used. The portion of that transcript which was read before the commission in the presence of petitioner and his attorneys consisted solely of the interview between the deputy city attorney and the petitioner. The deputy city attorney was present at the proceeding before the commission, was available for cross-examination, and presumably could have been placed under oath if the petitioner had requested it. Petitioner asserts that the report was hearsay, and that the person who made the shorthand notes or the deputy city attorney or any other person who was present when the alleged statements were made should have been called to testify. Petitioner, however, did not object to the report, and did not deny that he made the statements attributed to him.

The La Prade case, above mentioned and cited by petitioner relative to the necessity for introducing a report in evidence, is distinguishable from the present case in that in the cited case the employee was not advised that the report of investigation was favorable to him, and no report of investigation was referred to.

The petitioner's answers at the interview with the city attorney, concerning the reason the money was paid, were indefinite and evasive, and were inconsistent with his answers on the same subject at the meeting before the commission.

During the proceeding a commissioner said, "Mr. Freeman, We don't conduct legal hearings, and do not have to conduct a hearing at all," and that, "We are merely making an investigation." The record shows that these statements were not made for the purpose of limiting the presentation of petitioner's defense, and that they did not have that effect. It appears that such statements were merely to indicate that the commission considered that it was not required to conduct a hearing. The second statement above referred to was made in response to a question by one of petitioner's attorneys, as follows: "There will be no further hearing now?" At another time in the proceeding the commissioner also referred to "an additional hearing." The character of the proceeding, however, is not to be determined by the name used in referring to it. Its character is determined from a consideration of what actually occurred during the proceeding.

The petitioner was given a hearing.

The judgment is reversed. It is ordered that the petition for a writ of mandamus be and the same is hereby denied.

Desmond, P. J., and Shinn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 27, 1947. Carter, J., and Schauer, J., voted for a hearing.