[Civ. No. 15371. First Dist., Div. One. Mar. 5, 1953.]

Estate of LILLIAN WILSON, Deceased. CARITA SAN-
FORD, Appellant, v. JOSEPH A. BROWN, as Executor,
etc., et al., Respondents.

Sefton & Anderson for Appellant.

Joseph A. Brown, in pro. per., for Respondents.

WOOD (Fred B.), J.—Carita Sanford, residuary devisee and legatee of Lillian Wilson, deceased, has appealed from an order approving a compromise with Dewey Wilson, surviving

spouse of Lillian, of certain claims, demands and suits, proposed by Joseph A. Brown, executor of the estate.

In support of her appeal, appellant claims: (1) the petition for approval failed to state facts sufficient to show the advantage of the compromise, (2) the probate court refused to grant appellant a formal hearing on her objections, (3) the probate court determined the matter without any witnesses or evidence, and (4) the compromise is not to the advantage of the estate.

■ (1) *The petition for approval stated facts sufficient to show the advantage of the proposed compromise.*

The applicable statute, as a prerequisite to obtaining approval, requires the executor or administrator to file a verified petition "showing the advantage of the compromise, composition or settlement." (Prob. Code, § 718.5.)

In this case, the executor filed a verified petition in which he incorporated the text of the proposed agreement of compromise, stated that a dispute had arisen between the estate and Dewey Wilson concerning the interest of the latter in two pieces of real property, that he had investigated the matter and was familiar with the facts as asserted by both sides, based upon a court hearing as to one piece of property and a deposition as to the other, and said that "from all this your petitioner is of the belief that it is . . . for the best interests of said estate to enter into" the proposed agreement of compromise, and that "the compromise as set forth . . ., in the judgment of your petitioner is in the best interests of said estate and all parties concerned."

We deem this a sufficient statement that the compromise was of advantage to the estate, to withstand a general demurrer and give the court jurisdiction to consider the petition.

■ (2) *The probate court did not deny appellant a formal hearing of her objections.*

Upon the filing of the petition for leave to compromise, notice was given of the time and place of the hearing thereof, informing all persons interested in the estate then and there to appear and show cause, if any they had, why the petition should not be granted. Upon the day appointed, the matter was continued to November 16, 1951. Upon that day appellant's counsel appeared and filed appellant's written objections to the petition. The reporter's transcript shows that these objections were presented at the beginning of the hearing. The executor stated that he was acting as his own attorney and proceeded to present the matter to the court,

describing the pending lawsuits, the issues therein, and the proposed compromise agreement, reading the latter aloud in its entirety. Appellant's counsel participated in the discussion. Wilson's attorney also participated. In conclusion, the court said: "Very well, let the matter be submitted."

December 4, 1951, a minute order was made granting the petition and directing that a written order be prepared. December 7, a proposed written order, inclusive of findings, was served upon appellant's counsel. December 12, it was signed and the next day filed. December 17, appellant filed her notice of appeal. Not until June 13, 1952, when she filed her opening brief upon this appeal did appellant make any objection to or suggest any criticism of this hearing or the manner in which it was conducted.

We find in the record not the slightest indication that appellant was obstructed or curtailed in any manner in the presentation of her case. Her counsel participated fully. His unsworn statements went into the record along with those of the executor and the attorney for Wilson. He made no objection and raised no question concerning the informality of the hearing. He gave utterance to no need or desire for further presentation of anything on behalf of his client and offered no objection to the submission of the matter for consideration and determination by the court. Appellant can not now claim she did not have her day in court.

(3) *There is evidentiary support for the order.*

Appellant claims the trial judge made a determination with no evidence before him, principally because no witnesses were sworn. It is true that no witness was sworn at the hearing. The administrator presented the matter at some length and in detail, without any objection by anyone that he was not sworn. The same was true of appellant's counsel. He stated her case at some length. No one objected that no oath had been administered to him. The same was true of Dewey Wilson's attorney, who participated in similar fashion.

■ That testimony was none the less competent. An objection that evidence is incompetent because the witness has not been sworn is waived if not made when the evidence is offered or at·least while the defect is capable of being remedied. (*Estate of Da Roza,* 82 Cal.App.2d 550, 555-556 [186 P.2d 725]; *Tennant* v. *Civil Service Com.,* 77 Cal.App.2d 489, 497-498 [175 P.2d 568]; *Trigueiro* v. *Skow,* 24 Cal.App.2d 253, 254-256 [74 P.2d 836]; *People* v. *Duffy,* 110 Cal.App.

631, 635 [294 P. 496].) In the Da Roza case, a proceeding to confirm a probate sale, the unsworn statements of the attorney for the administratrix, the attorney for the purchaser, and the attorney for the contestant-appellant were treated as evidence. The appellant did not at the time object that those persons had not been sworn. Of that, the reviewing court said: "Moreover, the record discloses no objection at the hearing on the part of appellant to their testimony on the ground that the witnesses were not sworn. We must presume that appellant failed to object to the evidence on that ground. He thereby waived his objection to the competency of the evidence." (Pp. 555-556 of 82 Cal.App.2d.)

In addition, in our case, the court had judicial knowledge of two pieces of litigation between these parties in this very probate proceeding. One was pending to establish the death of Lillian Wilson and the termination of her interest as joint tenant with Dewey Wilson in respect to certain real properties in Morgan Hill and in San Francisco. The other involved a controversy between the administrator and Dewey Wilson concerning property on Howard Street in San Francisco. It culminated in the decision reported in 101 Cal.App. 2d 592 [225 P.2d 1002].

The trial court also had judicial knowledge of two independent actions then pending between these parties in the same court. One was a suit to quiet title to property situate on Bush Street, San Francisco, pending between the executor as plaintiff and Dewey Wilson as defendant. The other was a suit to quiet title to property situate on Howard Street, San Francisco pending between Dewey Wilson as plaintiff and the administrator as defendent. ▮ These two independent actions in the same court were specifically mentioned and identified in the administrator's petition and in appellant's objections. That was sufficient to warrant the trial court taking judicial notice of those actions. (*Mann* v. *Mann*, 76 Cal.App.2d 32, 40-41 [172 P.2d 369]; *Estate of McSweeney*, 107 Cal.App.2d 140, 142-145 [236 P.2d 846]; and *Estate of Pailhe*, 114 Cal.App.2d 658, 663 [251 P.2d 76].) ▮ Judicial notice is a form of evidence. (*Mann* v. *Mann*, *supra*, 76 Cal.App.2d 32, 42, and *Estate of Pailhe*, *supra*, 114 Cal. App.2d 658, 664-665.) ▮ Those actions and the issues in each were discussed at the hearing as if the records thereof were properly before the court. In such a case, even though not formally offered in evidence, the records of such actions are deemed properly admitted in evidence. (*Mann* v. *Mann*,

*supra,* 76 Cal.App.2d 32, 41-42; *Walsh* v. *Walsh,* 108 Cal.App. 2d 575, 578-579 [239 P.2d 472]; and *Estate of Pailhe, supra,* 114 Cal.App.2d 658, 663-664.) The record upon this appeal has been properly augmented by the inclusion of the files in those two independent actions and in the proceeding to establish termination of the joint tenancies.

■ It can not be said that the trial court acted without evidence when it approved the proposed compromise.

(4) *Is the proposed compromise of advantage to the estate?*

The probate court found the allegations of the executor's petition true, appellant's objections untrue and without substance or foundation in law or in fact, that the compromise was made and entered into in good faith by the executor and the other signatories, and that the compromise of the respective claims of the estate and of Dewey Wilson and others, as set forth in the petition on file with the court, "is for the advantage, benefit, and best interest of said estate and those interested therein, including but not limited to the said Carita Sanford."

Appellant claims that the evidence does not support this finding that the compromise is to the advantage of the estate. We are of the opinion that this finding is supported by the evidence and that we may not disturb the order based upon it.

A summary of the salient features of the compromise agreement will aid the discussion.

The Howard Street property, which consists of a hotel building and furnishings, stood in the name of Lillian Wilson at the time of her death but Dewey claims that it is community property and that he can prove it was purchased during their marriage and was put in Lillian's name for the sake of convenience because he was a merchant seaman and away at sea a great deal of the time. Pursuant to the compromise, this property is to be sold and the proceeds equally divided between the estate and Dewey, after adding or subtracting the net gain or loss made or incurred in operating the property pending the sale; also deducting $713.85 heretofore advanced by Dewey in respect to this property. The sum of $292.47 is also to be deducted. It will be paid to Dewey's attorneys. It represents a judgment in a forceable detainer action in respect to the Howard Street property, in favor of Dewey and against Carita Sanford and another. Dewey is assigning this judgment to the estate.

The Bush Street property consists of an apartment building which, at the time of Lillian's death, stood in her name

alone. Two days after her death her son recorded a joint tenancy deed from Lillian to herself and son. Later the son deeded the property to Dewey, who claims that he has proof that the deed was delivered prior to Lillian's death. Additionally, Dewey claims this was community property and was acquired under substantially the same circumstances as the Howard Street property. He values the equity in the Bush Street property at $5,000, with furniture worth $750 to $1,000, subject to several chattel mortgages. The estate, under the compromise, will concede that Dewey owns the Bush Street property and contents. He will relinquish and withdraw his claim for $1,504.60 against the estate for funeral expenses paid by him, and will pay the estate $1,000 in cash.

The estate concedes to Dewey the ownership of personal property at the home of Lillian and Dewey. The home consists of improved real property on Post Street in San Francisco. It appears that it was held by Lillian and Dewey in joint tenancy and had been homesteaded by them. Dewey's title as the survivor, under section 663 of the Probate Code, apparently is not in dispute.

Dewey has in his possession a diamond bracelet which he claims is his sole property. Lillian asserted ownership by bequeathing it to him in her will. Under the proposed compromise the administrator concedes that it is Dewey's property.

The compromise agreement further provides that the estate will hold Dewey free and harmless against any and all claims and other matters in connection with the estate and that the estate will pay all inheritance, estate and income taxes assessed or levied in connection with the estate or distributions thereunder.

It is apparent that in respect to each of these properties, real or personal, there were issues which could not be settled without litigation. That fact in itself furnished a substantial basis for the executor entering into a compromise and the court approving the compromise. (See *Kroger* v. *Truitt*, 27 Cal.2d 288, 294 [163 P.2d 735].) The executor evidently was convinced that Dewey could establish that the Howard Street property belonged to the community. The compromise as to that property will bring the estate approximately the financial equivalent of a one-half interest therein. If the Bush Street action were to be tried, Dewey might win all of the realty, leaving title to the personalty still in dispute. The compromise, instead, would seem to bring to the estate nearly, if not entirely, a fair financial return upon

a half interest in the realty. In respect to the bracelet, there was the issue of ownership. There would be no particular advantage to the estate in litigating that issue in view of the fact that if the estate should win, the bracelet would go to Dewey under the will. Appellant criticizes the undertaking on the part of the estate to hold Dewey harmless in respect to certain taxes but she has not shown that the estate has thereby assumed any obligation of substance which would tend to offset any of the more advantageous features of the compromise.

We must not overlook the fact that the court had the benefit of the opinion of the executor (based upon his investigation and the experience gained in the handling of the estate) that the proposed compromise is in the best interest of the estate and that the matter should be compromised. The executor's opinion is competent evidence in the absence of any objection by the appellant at the time when the opinion went into the record (*Estate of Kay*, 30 Cal.2d 215, 224 [181 P.2d 1], and cases cited).

Appellant contends that since she, the sole residuary beneficiary and the principal beneficiary under the will, offered and was and is ready and willing to bear the cost and furnish legal counsel for the litigation of the various matters in dispute, without financial cost to the estate, the conclusion is inescapable that the proposed compromise is without advantage to the estate. Such a claim overlooks the fact that the various properties in the estate are in the custody of the law during administration and that the law vests in the executor and the probate court duties and powers commensurate with their responsibility properly to administer the estate. Accordingly, there are necessarily involved various factors over and above the personal convenience and wishes of the ultimate beneficiary. One of these factors is the element of time, not merely of cost, in settling an estate. And the law looks with favor upon the settlement of litigation. (*Estate of Manischewitz*, 113 Cal.App.2d 5, 9 [247 P.2d 572] and cases cited.) It is neither for the residuary legatee nor for a reviewing court to undertake to substitute the judgment of either for that of the executor and the probate court in such matters when, as here, there is a substantial basis in the record for the decision which they have made.

At common law the executor or administrator had very extensive authority to compromise and settle claims and dis-

putes. A statute such as section 718.5 of our Probate Code does not abrogate or reduce the scope of his common law authority. It merely affords him additional protection from liability. (*Estate of Lucas*, 23 Cal.2d 454, 463-465 [144 P.2d 340].) In probate cases, as in other cases, a reviewing court must resolve all conflicts in the evidence in favor of the judgment or order under appeal. "It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence which is overwhelming in its persuasiveness but which may appear relatively unsubstantial—if it can be reflected at all—in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical." (*Estate of Bristol*, 23 Cal.2d 221, 223-224 [143 P.2d 689].)

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.