[Civ. No. 7052.   Fourth Dist.   Nov. 9, 1962.]

MARY KATHLEEN STUART, Plaintiff and Appellant, v. GEORGE W. STUART, Defendant and Respondent.

King & King and James L. King for Plaintiff and Appellant.

George W. Stuart, in pro. per., for Defendant and Respondent.

SHEPARD, J.—This is an appeal from an order modifying the child custody provisions of a divorce decree so as to change custody from plaintiff to defendant.

480

## FACTS

Plaintiff was born in 1930. Defendant was born in the year 1928. Fuhrmeister, hereinafter referred to, was born in 1938. Plaintiff and defendant were married July 4, 1952. Defendant was then and still is a member of the United States Marine Corps. There was born to this marriage on May 24, 1953, a daughter and on September 8, 1954, a son. Defendant went on overseas duty. Plaintiff separated from her husband December 12, 1959. Thereafter, plaintiff began keeping company with one Fuhrmeister. Whether or not this was the date defendant shipped overseas is not shown by the record. She filed a complaint for divorce on a general allegation of mental cruelty on December 15, 1959. In March 1960 the parties signed a property settlement agreement providing custody of the children to plaintiff with certain visitation provisions for defendant and support payments for the children. Later in 1960 plaintiff became pregnant by Fuhrmeister. On August 26, 1960, the complaint was heard as an uncontested matter and a decree was granted, following in detail the provisions of the property settlement agreement. On October 3, 1960, the interlocutory decree was filed *nunc pro tunc* as of August 26, 1960. In December 1960 plaintiff and Fuhrmeister set up regular housekeeping as husband and wife. As far as the children then knew, this was a legitimate marriage relationship. On May 7, 1961, plaintiff gave birth to a child by Fuhrmeister. Presumptively, this placed the normal conception time in July 1960, there being no suggestion of premature birth.

On August 18, 1961, defendant caused an order to show cause to be served on plaintiff asking for change of custody of the children from plaintiff to defendant. The hearing was set for August 28, 1961. On that day plaintiff caused the final decree of divorce to be entered. The hearing was continued. On September 2, 1961, defendant married his present wife. The exact date of plaintiff's marriage to Fuhrmeister is not shown by the record but she stated it was immediately after entry of the final decree. The court, on stipulation of the parties, referred the matter to the probation officer for investigation and report and after the written report was rendered a hearing was had on December 21, 1961, and the report was received for consideration by the court. The probation report indicates an opinion by the probation officer that the children were being well cared for by the plaintiff and that both parents are fit custodians. No affirmative recommendation is contained

in the report. No other evidence was then received and the matter was ordered submitted. Defendant immediately suggested that the court might discuss the matter of custody privately with the children. There was no formal stipulation to this but counsel for plaintiff, in response to the suggestion, said, ''Well, of course, I am not going to object, but I hope that the court will keep in mind that these children are only 7 and 8 years of age and since they will be with the father the week before they are brought in here, they could be very easily influenced to say most anything.''

To this the judge replied that he would take that into consideration. In the presence and hearing of all parties and counsel he then set the time for the interview with the children at 11 a. m. on December 29, 1961. No objection of any kind was made to the fact of interview or the time. No request was made for a different time. No request was made for a recordation of the interview or a statement from the court thereon. At the time set for the interview neither the plaintiff nor her attorney appeared. On the afternoon of December 29, 1961, the court made its order changing custody from the plaintiff to the defendant and terminating the support payment. Plaintiff appeals.

### Sufficiency of Evidence

Plaintiff first contends that the order of the court is not supported by the evidence and cites such authorities as Civil Code section 138; *Taber* v. *Taber,* 209 Cal. 755 [290 P. 36]; *Moon* v. *Moon,* 62 Cal.App.2d 185 [144 P.2d 596]; *Peterson* v. *Peterson,* 64 Cal.App.2d 631 [149 P.2d 206]; *Kelly* v. *Kelly,* 75 Cal.App.2d 408 [171 P.2d 95]; *In re Elliott,* 115 Cal.App.2d 536 [254 P.2d 135]; and *Sorrels* v. *Sorrels,* 105 Cal.App.2d 465 [234 P.2d 103], in support of that contention. The legislative and judicial policy of this state is made clear by these authorities and many others containing similar expression. We need, however, go no further than those cited by plaintiff.

Said section 138 in effect provides that the primary consideration is the welfare of the child and that if the child is old enough to form an intelligent preference the court may consider that preference; that neither parent is entitled to custody as of right, but that all other things being equal, custody of children of tender years should be in the mother.

The judicial policy on hearing and deciding of custody matters is sufficiently stated in the quotation from the *Taber* case, pages 756-757, where it is said that ''In determining whether other things are equal within the meaning of

the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved. The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered except insofar as they affect the best interests of the child. It is only when a clear case of abuse of discretion is made out that this court will interfere with the determination of this question on appeal. The rule has been so stated many times.''

This rule is reiterated in different language in all of the cases cited by plaintiff.

■ What changes, then, have occurred since the entry of the interlocutory decree, that would warrant the court giving consideration to a change of custody? First, we find plaintiff involved in adulterous cohabitation with Fuhrmeister prior to the entry of the interlocutory decree. The record does not show how soon after the date of separation plaintiff started keeping company with Fuhrmeister. Fuhrmeister is eight years younger than plaintiff. The record nowhere shows that at the time of the interlocutory decree the fact of plaintiff's possible pregnancy by a man other than defendant husband, was revealed to the trial court. Thereafter, in December 1960, plaintiff established a home with Fuhrmeister on a husband-and-wife basis. They did not then inform the children of the lack of marriage. The new child was born May 7, 1961. After the final decree was entered plaintiff entered into legal matrimony with Fuhrmeister. Defendant remarried. All of this involved factual change of circumstance which the trial court was entitled to consider on the question of the best welfare of the children. Plaintiff appears to believe that her children would not realize or understand what Fuhrmeister's relationship with her was. We are satisfied that the total changes that occurred after the date of the interlocutory decree were ample to support the order changing custody and that such order was not an abuse of discretion.

### Information From Children

■ Plaintiff next objects that the court acted on information obtained in a private interview not under oath. She cites no authority. When the proposal was made she affirmatively represented to the court that she would make no objection to the interview and interjected her own cautionary thought to help the judge weigh what was said by the children. She

knew the date, hour and place of the interview. She did not ask for a different date; she did not suggest a different procedure and she did not appear at the time set. Under the circumstances what was said amounted to consent on the part of plaintiff to the interview, and that the court weigh what was said as a partial basis for an order. Plaintiff waived objection to competency of the children's statements. (*Estate of Da Roza,* 82 Cal.App.2d 550, 556 [186 P.2d 725] ; *Tennant* v. *Civil Service Com.,* 77 Cal.App.2d 489, 498 [3] [175 P.2d 568] ; *Estate of Sherman,* 129 Cal.App.2d 721, 726-727 [1-3] [278 P.2d 42].)

One of the children was then in the second grade of school and the other in the fourth grade. From this factor, plus their age, it would appear that they were ordinarily bright, intelligent children. ▮ The decision as to whether they have an understanding sufficient to express an intelligent preference and how much, if any, weight to give to their statements is necessarily left to the sound discretion of the trial judge, based on his knowledge of the whole case background and his observation of the children and their reactions in the light of that knowledge.

▮ Plaintiff next contends that there was no showing of change of circumstance sufficient to justify modification. Our views under ''Sufficiency of Evidence'' make clear the reasons why we cannot agree with plaintiff's third contention.

### WELFARE OF CHILD; FITNESS OF PARENT

▮ Next, plaintiff contends that there was affirmative evidence of the fitness of the plaintiff and that the children were well cared for by her. Both fitness of the parent and welfare of the child are relative matters. No person with any knowledge of psychology fails to appreciate the tremendous absorption by children of those factors which ultimately make up their adult philosophy of life. Physical welfare is by no means the sole problem involved in child welfare. We cannot even say with complete finality just where physical welfare ranks with mental and moral welfare. Certainly a person whose philosophy of life places no importance on qualities of morality, loyalty and honesty, is not likely to become a happy and useful member of our social order. A sound body is of little value to a warped and twisted mind. These and other imponderables are all a legitimate part of the trial judge's weighing process.

The question of best interests of the child necessarily in-

volves prior conduct, especially that which has occurred since the last custody order. (*Sanchez* v. *Sanchez,* 55 Cal.2d 118, 124 [5] [10 Cal.Rptr. 261, 358 P.2d 533].) ▮ As was said in *Gobar* v. *Gobar,* 175 Cal.App.2d 129, 135 [3] [345 P.2d 480], quoting from other cases:

" 'It has been held repeatedly that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony . . .' [Citation.] '[T]his is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts.' '' See also *Sanchez* v. *Sanchez, supra,* at page 126 [9]. We are unable to find an abuse of discretion.

The order is affirmed.

Griffin, P. J., and Coughlin, J., concurred.