[No. S106660. Dec. 1, 2003.]

STEVE SCHIFANDO, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Law Offices of Robert M. Ball, Robert M. Ball and Loyst P. Fletcher for Plaintiff and Appellant.

Law Office of David J. Duchrow, David J. Duchrow and Robert E. Racine for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Charlotte E. Fishman for Equal Rights Advocates as Amicus Curiae on behalf of Plaintiff and Appellant.

Brad Seligman for The Impact Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Rothner, Segall & Greenstone and Glenn Rothner for California Faculty Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Joannie Chang for Asian Law Caucus as Amicus Curiae on behalf of Plaintiff and Appellant.

Madalyn Frazzini for California School Employees Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Beverly Tucker for California Teachers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Linda Kilb for Disability Rights Education and Defense Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Pat Shiu for Legal Aid Society/Employment Law Center as Amicus Curiae on behalf of Plaintiff and Appellant.

Vicky L. Barker for California Women's Law Center as Amicus Curiae on behalf of Plaintiff and Appellant.

James K. Hahn and Rockard J. Delgadillo, City Attorneys, Leslie E. Brown and Zna Portlock Houston, Assistant City Attorneys, Marie McTeague and Judith D. Thompson, Deputy City Attorneys, for Defendant and Respondent.

Best Best & Krieger, Arlene Prater and Alison D. Alpert for Sixty-One California Cities as Amici Curiae on behalf of Defendant and Respondent.

Jones Day, Elwood Lui, Scott D. Bertzyk and John A. Vogt for County of Los Angeles as Amicus Curiae on behalf of Defendant and Respondent.

Reed Smith Crosby Heafy, Paul D. Fogel, Raymond A. Cardozo; James E. Holst, John F. Lundberg, Eric K. Behrens and Jeffrey A. Blair for The Regents of the University of California as Amicus Curiae on behalf of Defendant and Respondent.

---

## OPINION

**CHIN, J.**—We granted review to determine whether a city employee must exhaust both the administrative remedy that the California Fair Employment and Housing Act (Gov. Code,[1] § 12900 et seq.) (FEHA) provides and the

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

internal remedy that a city charter requires before filing an FEHA disability discrimination claim in superior court. We conclude the employee need not exhaust both administrative remedies, and that receiving a Department of Fair Employment and Housing (the Department) "right to sue" letter is a sufficient prerequisite to filing an FEHA claim in superior court.

## I. FACTUAL BACKGROUND

Plaintiff Steve Schifando filed a complaint against the City of Los Angeles (the City) in Los Angeles County Superior Court, alleging employment discrimination based on physical disability under the FEHA. The complaint alleges the following: Schifando worked for defendant City's Parks and Recreation Department as a storekeeper. He suffered from severe hypertension that made him dizzy and lightheaded in stressful situations. He informed two supervisors of his condition.

Schifando met with the two supervisors in August 1998 to discuss his objections to recent changes in his job responsibilities. They argued with him and tried to get him to "blow his top" due to his medical condition. During the meeting, he began to sweat profusely, his face turned red, his chest felt constricted, and he had difficulty breathing. Finally, he exclaimed, "I can't take it anymore; I quit!" The supervisors asked him to "put it in writing" and provided a piece of paper on which Schifando wrote "I quit." The supervisors then left and returned with a blank "notice of vacancy and/or request for certification form." They did not complete the form or explain it to Schifando, but asked him to sign it. He complied because he sought to avoid what he considered further dangerous confrontation. Schifando reconciled with one of the supervisors, but the other supervisor processed the signed "certification," which Schifando learned was actually a resignation form. The complaint implies that the City terminated Schifando's employment in August 1998 because he signed the resignation form. Although Schifando alleged that he had received a "right to sue" letter from the Department, and the record shows he did receive it, his complaint failed to observe that he received the notice in June 1999, within one year of his resignation.

The City demurred to the complaint on the grounds that Schifando did not sufficiently allege that he was disabled or that he was able to perform the essential functions of his job, either with or without reasonable accommodations. The City also argued that the complaint failed to allege that Schifando had filed his administrative complaint with the Department by August 1999, as required by law. The trial court sustained the demurrer on the second ground and dismissed the action without leave to amend. Schifando filed a timely appeal. For the first time on appeal, the City alleged that Schifando had failed to exhaust his administrative remedies under the Charter of the

City of Los Angeles (City Charter). The Court of Appeal affirmed the judgment and denied leave to amend on the new issue, holding that Schifando was required to exhaust both the FEHA and the City Charter remedies before filing his lawsuit in superior court. We granted review.

## II. DISCUSSION

### A. *Procedural Background*

■ When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Courts must also consider judicially noticed matters. (*Ibid.*) In addition, we give the complaint a reasonable interpretation, and read it in context. (*Ibid.*) If the trial court has sustained the demurer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Ibid.*) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid.*) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid.*)

### B. *Administrative Remedies*

#### 1. *FEHA Remedies*

The California Fair Employment Practices Act was enacted in 1959 (former Lab. Code, § 1410 et seq., repealed by Stats. 1980, ch. 992, § 11, p. 3166) and recodified in 1980 in conjunction with the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq., repealed by Stats. 1980, ch. 992, § 8, p. 3166) to form the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140.) ■ The FEHA establishes as a civil right a person's freedom from employment discrimination based on disability. (Gov. Code, § 12921.) Discrimination because of disability is against public policy (Gov. Code, § 12920) and is an unlawful employment practice. (Gov. Code, § 12940.) ■ The legislative scheme created two administrative bodies: the Department (Gov. Code, § 12901), which investigates, conciliates, and seeks redress of claimed discrimination (Gov. Code, § 12930), and the Fair Employment and Housing Commission (the Commission) (Gov. Code, § 12903), which performs adjudicatory and rulemaking functions (Gov. Code, § 12935).

■ Employees who believe they have suffered discrimination under the FEHA may file complaints with the Department within a one-year period.

(§ 12960.) The Department must then investigate their claims (§ 12963). It has 150 days to issue either an accusation for hearing before the Commission (§§ 12965, subd. (a), 12969) or a "right to sue letter." Employees who receive a "right to sue" letter from the Department may then proceed on their statutory causes of action in superior court. They have one year from the date the letter is issued to do so. (§ 12965, subd. (b).) If the Department decides to issue an accusation with the Commission, it prosecutes the employee's complaint. If the Commission finds in favor of the employer, the employee may subsequently file suit in superior court. In this event, the Commission's findings are not binding on the court, which reviews the evidence de novo. (See *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 433 [217 Cal.Rptr. 16, 703 P.2d 354] (*State Personnel Bd.*); see also *Kerrigan v. Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 51 [154 Cal.Rptr. 29].)

The Legislature intended the FEHA's administrative system "to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of [the act], exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state . . . ." (§ 12993, subd. (c).) In other words, although the FEHA does not limit the application of other state statutes (e.g., Civ. Code, § 51.7), or constitutional provisions involving discrimination, it expressly preempts local governmental laws, regulations, and procedures that would affect the rights included in its provisions. It provides a one-year grace period for pending local enforcement proceedings. (Gov. Code, § 12960; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 77–79 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*).)

### 2. City Charter Remedies

The City Charter directs employees who believe they have been wrongfully suspended, laid off, or discharged to follow certain procedures. Former section 112 1/2 of article IX,[2] the provision at issue here, stated: "Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim

---

[2] On July 1, 2000, the City Charter was amended and article IX, section 112 1/2 was modified and renumbered, but the new provision did not effect material changes. (See City Charter, art. X, § 1017 [Employment Provisions—Demand for Reinstatement; Claim for Compensation].)

for compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk. Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement. Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge."

The demand requirement has been described as "somewhat analogous to the requirement of a petition for a rehearing addressed to the board." (*Steen v. Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 722 [160 P.2d 816].) Filing the demand does not compel the Board of Civil Service Commissioners to take any action. (*Id.* at p. 721.) Rather, it affords the board an additional opportunity to consider the matter before the complainant resorts to litigation. (*Ibid.*) It also serves to "fix[] a time limit and formalities necessary as a basis for court action." (*Id.* at p. 722.)

■ Under administrative mandamus procedure, the superior court may review a city board of civil service commissioners' decision upholding a layoff, discharge, or suspension. (Code Civ. Proc., § 1094.5.) However, assuming no vested right is involved, the court does not review the decision de novo, but under a substantial evidence standard. (See *State Personnel Bd., supra,* 39 Cal.3d at p. 433.) This standard of review reflects the respect this court has traditionally afforded public employers' internal reviewing board decisions. (See *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*).) However, we have never confronted the issue here presented, and find troubling the possibility that exhausting City Charter procedures might deprive a victim of discrimination of a civil right created by the Legislature.

### C. *State Personnel Bd.*

We discuss *State Personnel Bd., supra,* 39 Cal.3d 422, because the shortcomings of the Civil Service Act (§ 18500 et seq.) discussed in that case (as compared to the FEHA), are equally present with respect to the shortcomings of the City Charter at issue in this case. The main issue in *State Personnel Bd.* was whether the Department may exercise jurisdiction under the FEHA over state employees who are also protected under the antidiscrimination provisions of the Civil Service Act. (§ 19702, subd. (a).) We concluded that "the Legislature made a choice to afford both the remedies of the [state] Civil Service Act and the FEHA to members of the state civil service . . . ." (*State Personnel Bd., supra,* 39 Cal.3d at p. 435.) In reaching

this conclusion, we recognized some fundamental differences between the rights given to a discrimination complainant under the FEHA and under the Civil Service Act. It is important to note that the plurality decision in *State Personnel Bd.* did not reach the issue whether state employees would have to exhaust their remedies under the Civil Service Act in order to assert an FEHA claim. The court merely held that the Department *may* exercise jurisdiction over state employees. (*Id.* at pp. 432–434.)

*State Personnel Bd.* observed, "The [Department] provides enforcement services to discrimination complainants that do not have a counterpart in the civil service system. Under the FEHA, the Department bears the expense of investigating, conciliating and, where necessary, prosecuting the action on behalf of the claimant. (§§ 12961–12963, 12963.1–12963.7.) This includes the services of an attorney from the Department to try the case at no expense to the claimant. (§ 12969.) If the Commission decides in the claimant's favor, the Department must thereafter conduct a compliance review to see that the employer is fully obeying the Commission's order. (§ 12973.)" (*State Personnel Bd., supra,* 39 Cal.3d at p. 432.)

"These enforcement services are not available under the Civil Service Act. Appeals filed with the [State Personnel] Board are initially investigated and conciliated not by a neutral, outside agency like the [Department], but by the same state agency (the employer) that is charged with discrimination. (See Cal. Admin. Code, tit. 2, §§ 547.1–547.2.) . . . Moreover, while complainants may hire an attorney to represent them at a Board hearing (Cal. Admin. Code, tit. 2, § 73), they must bear the cost themselves." (*State Personnel Bd., supra,* 39 Cal.3d at p. 432.)

Similarly, under both former section 112 1/2 of title IX and current article X, section 1017 of the City Charter, the City is both the party accused of wrongdoing and the party charged with investigating the wrongdoing. No provision is made in the City Charter for the appointment of an attorney at no cost to the employee.

"The procedural rights afforded under the FEHA are also quite different from [State Personnel] Board procedures. Beginning with the filing of a complaint, the Board's internal rules require that appeal from an adverse employment decision be filed within 30 days (Board rule 64), whereas the FEHA provides a period of one year in which to file. (§ 12960.) Next, complainants under the FEHA have a private right of action in superior court—a right not afforded by the Civil Service Act. (§ 12965, subd. (b).) If their case is tried before the [Commission] instead of in superior court, and an adverse decision is reached, the superior court will independently review the evidence rather than deferring to the [Commission]'s adverse decision.

[Citations.] By contrast, in reviewing Board decisions the superior court is restricted to a 'substantial evidence' standard of review under which '[f]actual determinations are not subject to reexamination in a *trial de novo*, but are to be upheld by a reviewing court if they are supported by substantial evidence.' [Citation.]" (*State Personnel Bd., supra*, 39 Cal.3d. at pp. 432–433, fn. omitted.)

The City Charter at issue here was drafted by a board of freeholders in 1924. (Ann. City Charter (1973 ed.) p. iii.) The voters ratified the charter in January 1925, and it took effect on July 1, 1925. (*Ibid.*) Section 112 1/2 was added to the charter on April 4, 1937, and became effective April 29, 1937. (Ann. City Charter, *supra*, p. iii.) The charter focused on the remedies of compensation and reinstatement only, and required those claims to be "presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged" (City Charter, former art. IX, § 112 1/2), a period substantially shorter than the one year afforded to FEHA complainants. Practically speaking, this means that the City's Board of Civil Service Commissioners would hear the matter before the Department would. The court reviewing a petition for writ of administrative mandamus would give deference to the findings of the City's board. If the reviewing court upheld the City board's decision, its findings would then be res judicata on any claims filed after the Department issued a right to sue letter. If so, aggrieved employees would not have had the chance to develop their cases (through adequate discovery, presentation of evidence, and cross-examination, rights not guaranteed at the City's hearing) to the extent the Legislature intended.

In *State Personnel Bd.*, we emphasized that "[t]he most fundamental difference between the two forums . . . is the nature of the forums themselves. The [Commission] is a neutral body, disinterested in the controversy between employer and employee. By contrast, where [State Personnel] Board standards are challenged as discriminatory, the Board occupies the roles of both defendant and judge. Internal review of challenged standards is a healthy endeavor for any agency, and the Board should not be deprived of this opportunity. However, the Legislature has provided for *more* than this for state, [city and private] employees [alike]. It has provided for review of allegedly discriminatory standards by an independent adjudicatory body—the [Commission]." (*State Personnel Bd., supra*, 39 Cal.3d at p. 434, fn. omitted.)

 ■ Requiring City's employees to pursue remedies under both the City Charter and through the Department would frustrate the Legislature's intent. *State Personnel Bd.* emphasized that "The Legislature's intent was to give public employees the same tools in the battle against employment discrimination that are available to private employees. The FEHA was meant to

supplement, not supplant or be supplanted by existing antidiscrimination remedies, *in order to give employees the maximum opportunity to vindicate their civil rights against discrimination. . . ."*[3] (*State Personnel Bd., supra,* 39 Cal.3d at p. 431, italics added.) The court reasoned that "given the differences between the two statutory schemes, the Legislature's desire to include state employees within the purview of the FEHA, notwithstanding their coverage by the antidiscrimination provisions of the Civil Service Act, is understandable. The procedures, protections and enforcement services available to discrimination claimants under the FEHA go beyond those available under the Civil Service Act." (*State Personnel Bd.,* supra, 39 Cal.3d at p. 431, fn. omitted.) The court concluded that state employees should be able to choose between pursuing their claims under the FEHA or under other statutes that cover similar ground, but do not afford similar procedures, remedies and protections. (*Ibid.*)

### D. *Watson and Ruiz*

Two Court of Appeal decisions, both relying on *State Personnel Bd.,* concluded that a civil service employee may choose between the two administrative forums—the State Personnel Board or the Department. In *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1284 [261 Cal.Rptr. 204] (*Watson*), the Court of Appeal stated, "We fail to understand why the State continues to urge on appeal as it did in the trial court that Watson may not prevail because she has not exhausted her civil service administrative remedies. She need not have done so as the State well knows because Watson had a choice between her civil service remedies and those provided by the [FEHA]. (Gov. Code, § 12940 et seq.; [*State Personnel Bd., supra,* 39 Cal.3d at pp. 429, 431].) She chose to file her first charge with the DFEP [Department of Fair Employment Practices] and proceed accordingly. Watson complied with the procedures required under the act, received her 'right to sue' letter and timely filed her suit." (*Watson, supra,* at p. 1284.)

In *Ruiz v. Department of Corrections* (2000) 77 Cal.App.4th 891, 900 [92 Cal.Rptr.2d 139] (*Ruiz*), the Court of Appeal held that state employees may pursue their claims of employment discrimination with either the State Personnel Board or the Department, or both. Unlike *Watson, supra,* 212 Cal.App.3d at page 1284, *Ruiz* viewed *State Personnel Bd., supra,* 39 Cal.3d

---

[3] Any argument the dissent makes that our holding effectively *supplants* the City Charter's remedies with remedies available under the FEHA is without merit. Our holding has the effect of *supplementing* a city employee's avenue for redress with the FEHA alternative. Government employees remain free to pursue a city's internal remedy. Having chosen to file a claim with the Department, however, plaintiff is not required also to pursue the City remedy for discriminatory employment practices. Requiring him to do so *would* have the effect of *supplanting* his FEHA option, given the City's less rigorous procedural safeguards and the substantial evidence standard of review its findings would be accorded in a later proceeding.

422, as authority only for the Department's and the State Personnel Board's concurrent jurisdiction over matters involving state employee discrimination claims. (*Ruiz, supra,* at p. 897.) *Ruiz,* however, interpreted *State Personnel Bd.* and other cases as indicating a strong public policy supporting an employee's ability to challenge discriminatory employment practices in the forum of choice. (*Ruiz, supra,* at p. 898.) The court concluded that *State Personnel Bd.* in particular, supports "an expansive view of the avenues aggrieved state employees may pursue when filing their complaints." (*Ruiz, supra,* at p. 897.) The court correctly noted that we "took care to explain the differences between the two forums, emphasizing that the antidiscrimination provisions of the FEHA were more extensive than those in the Civil Service Act." (*Ibid.*)

*Ruiz* further reasoned that our "attention [in *State Personnel Bd.*] on the different purposes of the two agencies suggests it would be proper for a potential claimant to consider which forum would be more appropriate for his or her cause of action." (*Ruiz, supra,* 77 Cal.App.4th at p. 898.) We agree. In *State Personnel Bd.* we explained, "The purpose of the Civil Service Act is to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service. (See § 18500.) The purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights, and to eliminate discriminatory practices . . . . The Commission and Department have 25 years of administrative expertise solely in the prevention and remedying of civil rights discrimination, and thus have more specialized expertise in this area than does the [State Personnel] Board." (*State Personnel Bd., supra,* 39 Cal.3d at p. 432.) Thus, certain cases are more appropriate for the Department forum than for the State Personnel Board. For similar reasons, we find FEHA discrimination claims may be more appropriately heard by the Department than the City's Board of Civil Service Commissioners. Clearly, some plaintiffs would prefer the summary procedure of the Civil Service Act or comparable administrative remedies, while others with more serious discrimination claims would prefer to bypass the administrative procedures to seek a vindication of their civil rights, even if the ensuing litigation is expensive and protracted. The opportunity for all public and private employees to vindicate civil rights is the primary intent of the FEHA, and as *Ruiz* observed, this is why plaintiffs have a choice between their civil service remedies and those provided by the FEHA. (*Ruiz, supra,* 77 Cal.App.4th at p. 891.)

*Ruiz* also explored the practical considerations a state employee might face if we required employees to always exhaust their FEHA and state Civil Service Act remedies. As *Ruiz* explained, imposing this requirement would present a "procedural minefield. Not only must the state employee, as well as the state employer, struggle to comply with the substantive and procedural

requirements of each agency, but there arises a potential problem with the statute of limitations. Claimants who unsuccessfully appeal their termination with the [State Personnel] Board must file a writ in the trial court if they wish to challenge the findings of the Board. Otherwise, they are bound by the factual findings of the Board in future litigation. [Citations.] In the meantime, however, these same claimants must consider the strict statutory deadlines of the [Department] if they wish to file a subsequent or simultaneous complaint with that agency as well. According to the Department, claimants who receive their 'right to sue' letters from the [Department] cannot initiate their lawsuits because they must [first exhaust the administrative remedies the State Personnel Board requires], a wait that could affect filing deadlines with the trial court. Moreover, to avoid [the effect of collateral estoppel on issues the Board decides], these same claimants must also wait until their writ to the trial court has been decided before initiating legal action. [Citation.] Though the doctrine of equitable tolling could possibly remedy the problem, the fact remains that the failure of state employees to meet statutory deadlines would be a potential argument by employers in future litigation, adding another obstacle for employees." (*Ruiz, supra,* 77 Cal.App.4th at p. 899.)

*Ruiz* emphasized that if the court were to require state employees to exhaust their administrative remedies at the State Personnel Board, regardless of their desire to pursue the same claims with other agencies, it would be imposing on them a burden that private employees do not share, raising potential equal protection issues. (*Ruiz, supra,* 77 Cal.App.4th at p. 899.) The court also observed that affording state employees a choice between administrative remedies was in no way inconsistent with the doctrine of exhaustion of remedies, which, *Ruiz* concluded, requires only that a party comport with the chosen administrative forum's procedural requirements. (*Ibid.*)

 Even if we were to assume that former article IX, section 112 1/2, now article X, section 1017 of the City Charter is on equal footing with the Civil Service Act, we see no reason to distinguish the present action from *Ruiz.* As the Court of Appeal below acknowledged, the pursuit of separate administrative remedies may result in inconsistent administrative findings or adjudications. The court refused, however, to opine as to how to resolve the conflict should it occur, concluding instead that the possibility of conflict does not outweigh the benefits of requiring exhaustion of both administrative remedies.

We find the Court of Appeal's reasoning unpersuasive, and conclude the approach we adopted in *State Personnel Bd.,* and the Court of Appeal adopted in *Ruiz* and other cases is the better one. A city employee would indeed tread onto a "procedural minefield" if a claim was filed with the Department at the same time remedies were pursued under the City Charter.

■ The benefits of judicial economy, agency expertise, and potential for swift resolution of grievances are better served by a rule that allows aggrieved public employees to seek redress in the forum that is most appropriate to their situation.

We note an additional reason not to impose the internal exhaustion requirement in this case. As an employee of the City, Schifando is not governed by the Civil Service Act. Therefore, his principal statutory remedy (in addition to the general Unruh Civil Rights Act provisions (Civ. Code, § 51.7 et seq.) under California law to redress the asserted discrimination he suffered is to file an FEHA claim. ■ As we have recognized, the FEHA was enacted to expand, not to limit employees' rights to remedy discrimination. (*Rojo, supra,* 52 Cal.3d at p. 82; *State Personnel Bd., supra,* 39 Cal.3d at p. 431.) It would be inconsistent with this legislative purpose to hold that aggrieved employees must exhaust their remedies under a city charter contemporaneous with or before filing a claim with the Department.[4]

On a final note, we are not concerned that all public employees, and in particular those employees with a routine administrative claim for compensation or reinstatement will choose to bypass the summary and expeditious procedures and remedies the City Charter provides in order to proceed directly to a jury trial to seek an award of compensatory or punitive damages.

### E. *Johnson*

Our decision in *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*), does not militate against this

---

[4] Shortly before oral argument, amicus curiae County of Los Angeles, in support of respondent, filed a request for judicial notice of two specific items: Assembly Bill No. 2892 (2001–2002 Reg. Sess.) section 1, and the Governor's veto of the proposed legislation on September 28, 2002. We do not find the materials particularly supportive of respondent's cause or relevant to the action, and therefore deny the request. (Evid. Code, §§ 452, subd. (c), 459.)

After argument, County of Los Angeles also requested the court judicially notice the Ninth Circuit's opinion in *E.E.O.C. v. Luce, Forward, Hamilton & Scripps* (9th Cir. 2003) 345 F.3d 742. We are well aware of *Luce, Forward*'s holding that employers do not violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3) if they, as a condition of employment, require employees to submit all employment claims to arbitration. Although, as a reviewing court, we will judicially notice the decisional law of the United States, and do so here, we find *Luce, Forward*'s analysis and holding have no application to the issue in the present action. (Evid. Code, § 459, subd. (a).)

The same amicus curiae asserts that principles discussed in *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278 [132 Cal.Rptr.2d 713, 66 P.3d 718] render plaintiff's construction of the FEHA invalid on the ground that state statutes cannot constitutionally impinge on final decisions made by charter cities that have been vested with constitutional authority. After considering amicus curiae's contention, we reject it as inapposite. No party has alleged here that the Department is attempting to "displace" the decision of the charter city at issue or, as amicus curiae also claims, make a "completed substantive decision" about the city's power to remove its own employees.

conclusion. *Johnson* held that when employees have availed themselves of the administrative remedies a local statute affords, and have received an adverse quasi-judicial finding, that finding is binding on subsequent discrimination claims under the FEHA unless set aside through a timely mandamus petition. (*Id.* at p. 76.) The *Johnson* plaintiff failed to seek a timely writ of administrative mandate regarding the decision of his city employer's administrative decision that his termination was for economic reasons. (*Id.* at p. 66.) *Johnson* did not require the employee to exhaust his remedies before the city personnel board in order to assert an FEHA claim—in fact, the court made it clear that the issue was not before it. (*Id.* at p. 73.) Instead, the court observed that the plaintiff's reliance on *Watson, supra,* 212 Cal.App.3d 1271, was misplaced: "It is clear from the quoted language that the Court of Appeal in *Watson* faced the issue whether a plaintiff must exhaust non-FEHA administrative remedies as a prerequisite to initiating a lawsuit, including an FEHA claim. That issue is not before us. As we mentioned earlier, here plaintiff did exhaust the non-FEHA civil service administrative remedies provided by the City." (*Johnson, supra,* at p. 73.) Thus, *Johnson* held only that because the employee had exhausted the remedies the city offered, and had not exhausted his judicial remedies, the city agency's findings were binding on his subsequent FEHA claims. (*Ibid.*) We reasoned that refusing to give binding effect to those quasi-judicial findings would "undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation." (*Id.* at p. 72.)

Nothing in this conclusion disturbs our holding in *Johnson, supra,* 24 Cal.4th at page 72. We serve judicial economy by giving collateral estoppel effect to appropriate administrative findings. *Johnson*'s requirement that employees exhaust *judicial* remedies ensures proper respect for administrative proceedings. It requires employees challenging administrative findings to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court. *Johnson* also ensures that employees who choose to utilize internal procedures are not given a second "bite of the procedural

apple." However, we do not serve judicial economy if we require employees who have allegedly suffered discrimination at the hands of public employers to pursue redress in two separate forums. As noted above, to do so would frustrate legislative intent and create a procedural labyrinth that aggrieved employees, often not represented by counsel at the early stages of litigation, would likely be incapable of navigating.

### F. Cases Requiring Exhaustion of Internal Remedies

We have in the past and continue to recognize the value of internal remedies. In *Westlake, supra,* 17 Cal.3d 465, we held that a doctor must exhaust the internal remedies a private hospital offered before filing suit challenging the propriety of its decision to deny or withdraw her hospital privileges. *Westlake* noted that where the "policy considerations which support the imposition of a general exhaustion requirement remain compelling," parties may be required to exhaust their administrative remedies even if they seek remedies not available through administrative action. (*Id.* at p. 476.)

*Rojo* explained that "[t]he 'context' to which *Westlake* properly applies is where the party or entity whose 'quasi-judicial' determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy. [Citations.] [¶] The reason for the exhaustion requirement in this context is plain. . . . '[W]e believe as a matter of policy that the association itself should in the first instance pass on the merits of an individual's application rather than shift this burden to the courts.' . . . [¶] Though *Westlake, supra,* 17 Cal.3d 465, concerned the exhaustion of private internal remedies, many courts have nevertheless relied on its reasoning to require exhaustion of 'external' administrative remedies in a variety of public contexts. In so doing, the courts . . . have expressly or implicitly determined that the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute." (*Rojo, supra,* 52 Cal.3d at pp. 86–87.)

*Rojo* observed that the Legislature did not intend to require employees filing non-FEHA discrimination claims in court to exhaust the Department's remedies. (*Rojo, supra,* 52 Cal.3d at p. 86.) We explained, "a judge or jury is fully capable of determining whether discrimination has occurred." (*Id.* at p. 88.) However, the Legislature did intend that the plaintiffs who desire to pursue an FEHA remedy to have the benefit of the "efficiency and expertise the Department and Commission bring to bear in investigating and determining [not reviewing determinations made by internal panels of the employer regarding] statutory discrimination cases . . . . " (*Ibid.*)

In *Moreno v. Cairns* (1942) 20 Cal.2d 531 [127 P.2d 914] (*Moreno*), we specifically recognized the exhaustion requirement with respect to the City

Charter provision at issue in this case. We held that a "coerced resignation" fell under the "unlawful discharge" language of former section 112 1/2 of the City Charter, and that the plaintiff's failure timely to utilize the internal appeal procedure barred his writ of mandate to the superior court, seeking reinstatement with the City fire department.

The gist of *Westlake, Rojo,* and *Moreno* is a respect for internal grievance procedures and the exhaustion requirement where the Legislature has not specifically mandated its own administrative review process, as in the FEHA.[5]

This court, however, has never held that exhaustion of an internal employer procedure was required where an employee made a claim under FEHA or another statutory scheme containing its own exhaustion prerequisite. The distinction is compelling.

## III. CONCLUSION

 We hold that municipal employees who claim they have suffered employment-related discrimination need not exhaust City Charter internal remedies prior to filing a complaint with the Department. We recognize the existence of potential procedural issues that might arise in the situation where an employee chooses to pursue both avenues of redress, but those issues are not before us.[6]

Therefore, based on the principles discussed above, the Court of Appeal erred in affirming the trial court's judgment. We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with our conclusion.[7]

---

[5] As noted, the FEHA provides its own administrative remedies, a fact the dissent overlooks. The dissent's questionable analysis in turn, leads it to criticize sound precedent from our own appellate courts (including *Ruiz, supra,* 77 Cal.App.4th at p. 900), and misapply our decisions in *Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026 [6 Cal.Rptr.3d 441, 79 P.3d 556], *Johnson, supra,* 24 Cal.4th 61, *Rojo, supra,* 52 Cal.3d 65, *State Personnel Bd., supra,* 39 Cal.3d 422, *Westlake, supra,* 17 Cal.3d 465, and *Moreno, supra,* 20 Cal.2d 531, an untenable position we find unsupported in law or fact. We specifically do not decide whether an employee would be required to satisfy internal administrative remedies when the statutes implicated by particular facts do not provide their own internal administrative procedures.

[6] One note of caution is required. In the present action, Schifando filed the FEHA claim only. We therefore need not decide whether his failure to exhaust the City's procedures would have barred any other claim based on the same acts by the City.

[7] Because we reverse the Court of Appeal's judgment, it is unnecessary for us to address Schifando's claim that the City Charter violates the equal protection clauses of the state or federal Constitution, or to resolve the remaining issue whether the Court of Appeal abused its discretion in sustaining the demurrer on a new legal theory without leave to amend.

George, C. J., Kennard, J., Werdegar, J., and Moreno, J., concurred.

**BAXTER, J.,** Dissenting.—The issue in this case is whether an employee who believes he has suffered disability discrimination as a result of a coerced resignation at the hands of a city employer must exhaust both the internal administrative remedy provided for such claims in the city charter and the separate administrative remedy provided by the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) before filing an FEHA-based action in superior court. The majority concludes the employee need not exhaust both administrative remedies, and that receiving a Department of Fair Employment and Housing (Department) "right to sue" letter is a sufficient prerequisite to filing a disability discrimination action in court. I disagree.

The majority's holding today will authorize, if not encourage, public employees to forgo the very comprehensive internal grievance procedures that are designed to protect and vindicate their employment rights— procedures that also serve the dual purpose of affording public entities, such as charter cities and counties, the opportunity to exercise their constitutionally vested decisionmaking authority over matters of public employment, including employee appointment, compensation, tenure, and discharge or removal. (See *County of Riverside v. Superior Court* (2000) 30 Cal.4th 278, 282 [132 Cal.Rptr.2d 713, 66 P.3d 718].) The majority's holding could effectively eviscerate the municipality's internal remedies for redressing employment discrimination afforded city employees under the city charter. This court has observed that in enacting the FEHA, "[t]he Legislature's intent was to give public employees the same tools in the battle against employment discrimination that are available to private employees. The FEHA was meant to *supplement, not supplant* or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination . . . ." (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354], italics added (*State Personnel Bd.*).) I conclude the Legislature did not intend the FEHA to supplant all local jurisdiction and decisionmaking authority over a city employee's employment discrimination claims, much less abrogate the venerable rule of exhaustion of administrative remedies as applied in this context.

To the contrary, the specific city charter provision here in issue required plaintiff to avail himself of the city's internal employee grievance procedures as a condition precedent to filing suit in court long before the FEHA and its predecessor statute were enacted. Had the Legislature intended to preempt public municipalities from exercising their constitutional authority over their employees' labor grievances in the first instance, and at the same time abrogate the rule requiring exhaustion of administrative remedies in this

context, surely it knew how to do so, and would have done so, directly and expressly. (See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 75 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*) [if the Legislature had intended to repeal other applicable laws, "it plainly knew how to do so"].) Accordingly, under settled principles of statutory construction, and in the absence of clear evidence to the contrary, we must infer that the Legislature did not intend to preempt public municipalities from exercising their constitutionally based jurisdiction over their employees' labor grievance claims by exempting public employees who choose to bypass their internal remedy and file an FEHA-based action directly in court from the long-standing exhaustion requirement. As will be shown, various decisions of this court support that conclusion. For these reasons, I respectfully dissent.

It is a settled and fundamental rule of procedure that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942] (*Abelleira*).) *Abelleira* explained that the requirement of exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the courts." (*Id.* at p. 293.) " 'The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy has been held *jurisdictional* in California.' " (*Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307, 311 [283 Cal.Rptr. 447], citing 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 265.)

The doctrine of exhaustion of administrative remedies serves several important functions. It gives the administrative body with jurisdiction over a claim an opportunity to redress the claimed wrong, or possibly mitigate the claimant's damages, short of costly litigation in the courts. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543].) It can often lead to the most prompt and economical means of resolving disputes, and even where complete relief is not obtained, it can serve to reduce the scope of litigation or possibly avoid it altogether. (See *Rojo, supra,* 52 Cal.3d at p. 86.) And where a dispute is unavoidably headed to court, the requirement that statutory administrative remedies first be exhausted affords the agency or entity implicated in the claim an opportunity to apply its expertise, ensure the development of a complete factual record, and assist or help focus the subsequent judicial review process. (*Sierra Club, supra,* 21 Cal.4th at p. 501.)

Many California public entities like the City of Los Angeles here have established civil service systems that provide comprehensive internal remedies and protections for resolving employment-related grievances for the vast number of public employees across this state. Among the various amici curiae briefs we have received in this matter is one on behalf of 61 California cities, urging that the holding in this case will be of vital importance to public agencies throughout the state which, in the role of employers, routinely afford their employees internal administrative remedies for the investigation and resolution of discrimination, wrongful termination, and similar employment-related claims. The expressed concern is that a holding from this court—that plaintiff here was not required to exhaust his internal administrative remedies provided under the Los Angeles City Charter before filing a disability discrimination claim in superior court pursuant to the FEHA—will greatly impact the efficiency and effectiveness of those administrative remedies, as well as a public entity's ability to seek to amicably resolve employment discrimination claims without resort to costly litigation, by authorizing employees to *bypass* those internal remedies and file actions directly in court without fair notice to the employer of the nature, or possibly even the existence of the employee's claim, much less an opportunity to resolve it in a conciliatory and cost-effective fashion.

The Charter of the City of Los Angeles (city charter) requires employees who claim they have been wrongfully suspended, laid off or discharged to follow certain procedures in perfecting a discrimination claim against the city. Time limits are imposed for the making of demands for reinstatement or claims for compensation. Former section 112 1/2 of article IX of the city charter (now renumbered section 1017 of article X, but materially unchanged), the provision at issue herein, provided: "Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim for compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk. Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement. Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge."

In *Moreno v. Cairns* (1942) 20 Cal.2d 531 [127 P.2d 914], this court gave effect to the exhaustion requirement embodied in former city charter section 112 1/2 when we recognized that the requirement—that a city employee claiming he or she has been wrongfully and unlawfully "suspended, laid off or discharged" file a demand for reinstatement and/or a claim for compensation within a specified time period—is a valid precondition to maintaining a mandamus action in superior court for reinstatement or wages due. (*Moreno*, at pp. 534–535.) We further held that a "coerced resignation," such as is alleged by plaintiff in this case, fell under the "unlawful discharge" language of former section 112 1/2. (*Moreno*, at pp. 535, 536.)

The California Fair Employment Practices Act was enacted in 1959 (former Lab. Code, § 1410 et seq., repealed by Stats. 1980, ch. 992, § 11, p. 3166) and recodified in 1980 in conjunction with the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq., repealed by Stats. 1980, ch. 992, § 8, p. 3166) to form the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140.) As applicable here, the FEHA declares disability discrimination to be an unlawful employment practice in contravention of public policy, and establishes as a civil right a person's freedom from employment discrimination based on disability. (Gov. Code, §§ 12920, 12921, 12940.)

The rule requiring exhaustion of administrative remedies was well settled at the time the Legislature enacted the Fair Employment Practices Act and, 20 years later, recodified its provisions in the FEHA. This court's decision in *Moreno v. Cairns,* which recognized the exhaustion rule's applicability under the very city charter provision here in issue, was likewise established law when the FEHA and its predecessor statute were enacted. Under settled principles of statutory construction we must presume that the Legislature, at the time it enacted the FEHA, was aware of the well-established exhaustion rule, as well as decisions of this court (e.g., *Steen v. Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 721 [160 P.2d 816]; *Moreno v. Cairns, supra,* 20 Cal.2d 531) and our intermediate appellate courts (e.g., *Temple v. Horrall* (1949) 92 Cal.App.2d 177, 179 [206 P.2d 909]; *Tennant v. Civil Service Com.* (1946) 77 Cal.App.2d 489, 497 [175 P.2d 568]) specifically invoking or applying it in this context. It is a fundamental rule of statutory construction that "[t]he Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

The Legislature likewise may be presumed to have been aware, at the time it enacted the FEHA, of the thousands upon thousands of public employees across this state who fell within the protection of comprehensive remedial internal grievance procedures designed to resolve their employment disputes

in an amicable and expeditious fashion, to provide opportunities for conciliation and settlement, and, short of that, to draw upon the public agency employer's expertise to narrow and focus the issues relating to the claim and thereby streamline, if not avoid altogether, litigation costly to both parties and burdensome to the courts. In *State Personnel Bd., supra,* 39 Cal.3d 422 [217 Cal.Rptr. 16, 703 P.2d 354], in the course of rejecting an argument that the Legislature intended the FEHA to apply only to employees of state agencies who were exempt from civil service protection, this court suggested "[i]t is inconceivable that the Legislature could have silently excluded 130,000 civil servants from its contemplation when it provided that 'state' employees would be covered by the Act." (*Id.* at p. 429.)

Neither the FEHA nor its predecessor statute contains any language suggesting that, in the context of redress of public-employee grievance claims, the Legislature intended to abrogate the long-standing rule requiring exhaustion of internal administrative remedies before suit can be filed in court, and to instead permit public employees to bypass their employers' internal remedies and grievance procedures by bringing an FEHA-based action directly in court in the first instance. Under settled rules of statutory construction, the Legislature's failure to expressly provide for such an exception "is presumed to be intentional." (*Fierro v. State Bd. of Control* (1987) 191 Cal.App.3d 735, 741 [236 Cal.Rptr. 516] [failure to expressly apply collateral source exception to limits on reimbursement in criminal restitution statute rendered exception inapplicable].)

Nor does the circumstance that the FEHA has its own separate exhaustion requirements support the majority's conclusion that the Legislature intended to exempt public employees from the requirement that they first exhaust their public employers' internal remedies before bringing suit in court. This court's decision in *State Personnel Bd., supra,* 39 Cal.3d 422, does not hold otherwise—our decision in that case stands only as authority for the proposition that the Department and the State Personnel Board share *concurrent jurisdiction* over matters involving state employee discrimination claims (*id.* at p. 441), *not* that the Department's FEHA-based jurisdiction preempts the jurisdiction of a state or local public agency over its employees' employment discrimination claims.

Plaintiff relies on Government Code section 12993, subdivision (c) (section 12993(c)), an FEHA provision, as evidence that the Legislature intended to exempt public employees who bypass their employers' internal grievance procedures and opt to file an FEHA-based action directly in superior court from the rule requiring exhaustion of administrative remedies. Section 12993(c) provides, in pertinent part, "[I]t is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing

encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state . . . ."

The majority agrees with plaintiff that, "although the FEHA does not limit the application of other state statutes . . . , or constitutional provisions involving discrimination, [section 12993(c)] expressly preempts local governmental laws, regulations, and procedures that would affect the rights included in its provisions." (Maj. opn., *ante,* at p. 1082.) I do not so read section 12993(c). As *State Personnel Bd.* teaches, the FEHA was enacted to *supplement* existing antidiscrimination remedies, *not* supplant them. Nor is there any compelling reason to conclude that requiring public employees to avail themselves of their internal administrative remedies before initiating costly and burdensome litigation in court would chill the rights and remedies available to them under the FEHA.

We have repeatedly recognized in many of this court's decisions that the FEHA was enacted to expand, not to limit, employees' rights to seek redress for employment discrimination. (See, e.g., *Rojo, supra,* 52 Cal.3d at p. 82; *State Personnel Bd., supra,* 39 Cal.3d at p. 431.) And we have, in many past cases, acknowledged the value and importance of an employer's internal administrative procedures and remedies for redressing employment-related grievances.

In *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*), this court held that a doctor must exhaust the internal remedies afforded by a private hospital before filing an action in court challenging the propriety of its decision to deny or withdraw hospital privileges. Observing that the plaintiff in *Westlake* was seeking only money damages, and not reinstatement, we explained, "Nevertheless, the policy considerations which support the imposition of a general exhaustion requirement remain compelling in this context. In the first place, even if a plaintiff no longer wishes to be either reinstated or admitted to the organization, an exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; an individual should not be permitted to increase damages by foregoing available internal remedies. (See Summers, *Legal Limitations on Union Discipline* (1951) 64 Harv.L.Rev. 1049, 1089.) [¶] Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the

merits of the plaintiff's claim in the first instance. (See *id.*) Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts inevitable (see *Developments in the Law-Private Associations* (1963) 76 Harv. L.Rev. 983, 1075), the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review. Accordingly, we conclude that the exhaustion of remedies doctrine fully applies to actions seeking damages for an allegedly wrongful termination of or exclusion from membership in a private association. [Citation.]." (*Id.* at pp. 476–477, fn. omitted.)

Subsequently, in *Rojo*, we explained that, "[t]he 'context' to which *Westlake* properly applies is where the party or entity whose 'quasi-judicial' determination is challenged—be it hospital, voluntary private or professional association, *or public entity—has provided an internal remedy.* [Citations.] [¶] The reason for the exhaustion requirement in this context is plain. . . . '[W]e believe as a matter of policy that the association itself should in the first instance pass on the merits of an individual's application rather than shift this burden to the courts.' . . . [¶] Though *Westlake, supra,* 17 Cal.3d 465, concerned the exhaustion of private internal remedies, many courts have nevertheless relied on its reasoning to require exhaustion of 'external' administrative remedies in a variety of public contexts. In so doing, the courts . . . have expressly or implicitly determined that the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute." (*Rojo, supra,* 52 Cal.3d at pp. 86–87, italics added.)

We concluded in *Rojo* that, "By expressly disclaiming a purpose to repeal other applicable state laws ([Gov. Code,] § 12993, subd. (a)), we believe the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination. Had the Legislature intended otherwise, it plainly knew how to do so. [Citations]." (*Rojo, supra,* 52 Cal.3d at p. 75.) We further acknowledged the ambiguity of section 12993(c), the provision relied on by plaintiff and the majority here for the proposition that in enacting the FEHA, the Legislature intended to preempt the requirement that a public employee exhaust the public entity's internal grievance procedures. *Rojo* explains, "As written, [section 12993,] subdivision (c) is ambiguous. First, the phrase 'occupy the field' may convey displacement either of all other law, without limitation [citations], or, alternatively, of only local law by a higher law [citations]. [¶] Second, the stated legislative intent to occupy the field *'exclusive of* all other laws banning discrimination . . . by any city, city and county [etc.]' (§ 12993(c), italics added) can be read to mean 'not including' local laws (see, e.g., Webster's New Internat. Dict. (2d ed. 1935) p. 890, col. 3), thereby removing them from the preemptive effect of the statute, or, as the parties assume, 'to the exclusion of' local laws, thereby preempting such laws.

Further, 'laws banning discrimination . . . *by* any city [etc.]' (italics added) can mean laws that prohibit discrimination *on the part of* any city, etc., or, as the parties assume, laws that are *enacted by* any city or other local entity." (*Rojo, supra,* 52 Cal.3d at pp. 76–77.)

The majority chooses to read the ambiguous language of section 12993(c) as conclusively preemptive: "In other words, although the FEHA does not limit the application of other state statutes (e.g., Civ. Code, § 51.7), or constitutional provisions involving discrimination, it expressly preempts local governmental laws, regulations, and procedures *that would affect the rights included in its provisions.*" (Maj. opn., ante, at p. 1082, italics added.) Therein lies the rub. I part company with the majority when it concludes the FEHA administrative remedy must be deemed an exclusive one because, to conclude otherwise, i.e., to give force and effect to the internal exhaustion requirements under the city charter, would necessarily detrimentally impact plaintiff's rights under the FEHA. Not so.

That the Legislature sought to preserve for public employees several avenues of redress to remedy employment discrimination claims sheds no light on the *order* in which the Legislature envisioned the employee would pursue available administrative remedies. There is no inherent inconsistency between, on the one hand, the circumstance that a municipal employee has the right to file and pursue an internal employment discrimination grievance with his or her employer, an FEHA-based claim with the Department, and, if necessary, a civil action in court, and on the other hand, a rule requiring the employee to exhaust his or her internal administrative remedy *as a prerequisite to filing suit in court.* Once again, because the rule requiring exhaustion of internal administrative remedies as a condition to filing a court action was well established when the Legislature enacted the FEHA, the failure of the Legislature to create an express exception to that long-standing rule is evidence it did not intend any such exception.

I agree with the observation of the Court of Appeal below that "[a] city employee can pursue the administrative remedies provided by FEHA and the city charter simultaneously. The remedies do not conflict with each other, and pursuit of one would not undermine or impair pursuit of the other. Each requires filing a claim or claims with an administrative agency, and the pursuit of both is not an undue burden, particularly when either remedy could provide complete or partial relief, obviate the need for litigation or reduce the scope of litigation, develop a more complete factual record, and draw upon agency expertise. In these circumstances, the pursuit of two administrative remedies, each of which independently offers advantages, increases the potential for judicial economy and other benefits." I fail to see why a city employee would necessarily "tread onto a 'procedural minefield' if a claim

was filed with the Department at the same time remedies were pursued under the City Charter." (Maj. opn., *ante,* at p. 1088.)[1]

The majority relies on the holdings in *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1284 [261 Cal.Rptr. 204] *(Watson),* and *Ruiz v. Department of Corrections* (2000) 77 Cal.App.4th 891 [92 Cal.Rptr.2d 139] *(Ruiz),* in support of its conclusion that plaintiff could file his FEHA-based action in superior court without first exhausting his internal remedies under the city charter's employee grievance procedures. I would not endorse the holdings in *Watson* and *Ruiz,* but would instead disapprove those decisions, as they both rest on a flawed reading of this court's holding in *State Personnel Bd., supra,* 39 Cal.3d 422.

The *Watson* court held that plaintiff, a state civil service employee, "had a choice between her civil service remedies and those provided by [FEHA]," citing this court's decision in *State Personnel Bd.,* with little more, as authority for that conclusion. *(Watson, supra,* 212 Cal.App.3d at p. 1284.) The *Ruiz* court took a somewhat more reserved position, reading our decision in *State Personnel Bd.* as authority only for the proposition that the Department and the State Personnel Board shared *concurrent jurisdiction* over matters involving state employee discrimination claims. *(Ruiz, supra,* 77 Cal.App.4th at p. 897.) The *Ruiz* court nevertheless reasoned that this court's "attention [in *State Personnel Bd.*] on the different purposes of the two agencies suggests it would be proper for a potential claimant to consider which forum would be more appropriate for his or her cause of action." *(Id.* at p. 898.)

The majority suggests that, "The opportunity for all public and private employees to vindicate civil rights is the primary intent of the FEHA, and as *Ruiz* observed, this is why plaintiffs have a choice between their civil service remedies and those provided by the FEHA. *(Ruiz, supra,* 77 Cal.App.4th at p. 891.)" (Maj. opn., *ante,* at p. 1087.) I agree that differing circumstances

---

[1] The Court of Appeal forthrightly acknowledged that the pursuit of separate administrative remedies could theoretically result in inconsistent administrative findings or adjudications. The majority finds faults with that conclusion, suggesting the Court of Appeal "refused . . . to opine as to how to resolve the conflict should it occur, concluding instead that the possibility of conflict does not outweigh the benefits of requiring exhaustion of both administrative remedies." (Maj. opn., *ante,* at p. 1088.) Does our majority do any better when it likewise concludes, "We recognize the existence of potential procedural issues that might arise in the situation where an employee chooses to pursue both avenues of redress, but those issues are not before us"? (Maj. opn., *ante,* at p. 1092.) This case presents a complex question of administrative law. There are undoubtedly conflicts and questions that could arise where multiple administrative remedies are simultaneously pursued. Both the majority here, and the Court of Appeal below are correct in concluding that such speculative matters are most appropriately left for another day, when the facts of an actual case in controversy present them for resolution.

may prompt a public employee desirous of pressing an employment discrimination claim to choose which administrative or judicial remedy or remedies to pursue. He or she may elect to pursue the internal remedies offered by the employer, or file an FEHA-based discrimination claim with the Department by complying with the FEHA's separate administrative remedies, or pursue both administrative avenues of redress, and/or bring a civil action in court. There is no legal impediment to an employee's ultimately pursuing multiple administrative remedies where available, or both administrative *and* judicial remedies, either sequentially or simultaneously. (See *Rojo, supra,* 52 Cal.3d at p. 88.)

There is, however, one important caveat—the long-standing rule that one cannot pursue a *judicial* remedy unless he or she has first exhausted internal administrative remedies. And for the many practical reasons noted above,[2] whether the employee desires to press a common law employment discrimination claim *or* an FEHA-based discrimination claim, or both, in court—the administrative remedy that must first be exhausted in every instance before litigation may be commenced is the internal remedy provided by the public-entity employer on behalf of, and for the benefit of, its employees.[3] The majority's conclusion to the contrary will only *thwart*, not serve, the Legislature's underlying purpose and intent in enacting the FEHA. As we have recognized, "By expressly disclaiming a purpose to repeal other applicable state laws ([Gov. Code,] § 12993, subd. (a)), we believe the Legislature [in enacting the FEHA] has manifested an intent to *amplify*, not abrogate, an employee's common law remedies for injuries relating to employment discrimination." (*Rojo, supra,* 52 Cal.3d at p. 75, italics added.)

Much emphasis has been placed on the circumstance that the Department has issued a right-to-sue letter to plaintiff in this case. But plaintiff did not ascend to a fog-shrouded mountaintop and return with a stone tablet commanding him to file suit in this matter. As we explained in *Rojo, supra,* 52 Cal.3d at pages 83–84, compliance with the exhaustion requirement "is not

---

[2] "In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation (see *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [257 Cal.Rptr. 665]), as well as the salutory goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute (see *McKee v. Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1244–1245 [231 Cal.Rptr. 304]). By contrast, in those cases appropriate for judicial resolution, as where the facts support a claim for compensatory or punitive damages, the exhaustion requirement may nevertheless lead to settlement and serve to eliminate the unlawful practice or mitigate damages . . . ." (*Rojo, supra,* 52 Cal.3d at p. 83.)

[3] Where, as here, the employee seeks to pursue an FEHA-based action in superior court, then of course the separate administrative remedy provided under the FEHA must be exhausted as well, pursuant to the provisions of the FEHA.

an impediment to civil suit, in that the Department's practice evidently is to issue a right-to-sue letter ([Gov. Code,] § 12965) at the employee's request as a matter of course (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 at pp. 1401–1402 [241 Cal.Rptr. 67, 743 P.2d 1323]; see, e.g., *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060 [257 Cal.Rptr. 768]; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1399 [245 Cal.Rptr. 606])."[4]

In *State Personnel Bd.,* we "stressed the distinction between an employee's assertion of a private right before an administrative agency and the [Department's] acting as a public prosecutor asserting a public right." (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 73 (*Johnson*).) We explained in *State Personnel Bd.* that, "an employee complaining before the [State Personnel] Board is asserting a private right, while the [Department] is a 'public prosecutor . . . test[ing] a public right.' [Citation.] The employee's choice to assert the former should not bar litigation of the latter right." (*State Personnel Bd., supra,* 39 Cal.3d at p. 444.) Thus, we determined in *State Personnel Bd.* that "a decision against an individual in an administrative proceeding does not preclude a public agency, when acting as a public prosecutor, from asserting a public right." (*Johnson, supra,* 24 Cal.4th at p. 74.)

In light of the teachings of *Rojo, State Personnel Bd.,* and *Johnson,* we might reasonably characterize the Department's issuance of a right-to-sue letter as reflective of the Department's determination to take no action or pass on the opportunity to pursue the public-right aspect of an employee's claim, leaving the employee to his or her private-right remedies, including suit in court. Our prior cases explain that the Department, at most, shares *concurrent jurisdiction* with public-entity employers, which are constitutionally vested with decision making authority over their employees' labor-related grievances in the first instance. I would treat the Department's issuance of a right-to-sue letter in this case as an indication that the Department has determined to take no further action in the matter, relegating plaintiff to his private right remedies, including a court action. That said, the Department has no authority to interfere with or undercut the long-standing jurisdictional rule (*Abelleira, supra,* 17 Cal.2d at p. 293) requiring plaintiff to first exhaust his internal administrative remedies available to him under the city charter as a precondition to filing a disability discrimination action against the city as employer in superior court.

---

[4] In *Swartzendruber v. City of San Diego* (1992) 3 Cal.App.4th 896, at page 910 [5 Cal.Rptr.2d 64], the Court of Appeal concluded that the FEHA process of obtaining a right-to-sue letter from the Department was "an alternative administrative avenue to the City's internal review proceedings and an appeal to the [San Diego Civil Service] Commission." In a one-paragraph discussion, we wasted little time in disapproving that decision. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 72 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

The majority's holding exempting all FEHA plaintiffs from their obligation to exhaust available internal administrative remedies before filing suit is also a marked departure from the spirit if not the letter of our recent holding in *Johnson, supra,* 24 Cal.4th 61. The plaintiff in *Johnson* was an Assistant City Manager of the City of Loma Linda who, after being laid off, filed a grievance claim with the city's personnel board, alleging he had been dismissed for complaining about the sexual harassment of a coworker. The board rejected the claim, concluding he had been laid off for valid economic reasons. The plaintiff appealed to the city council, which upheld the personnel board's decision. Rather than file a mandamus action in superior court to obtain review of the city council's decision, the plaintiff filed a claim with the Department. Two years later, after obtaining a right-to-sue letter from the Department, the plaintiff filed an FEHA-based action in superior court joined with a petition for writ of mandate (Code Civ. Proc. § 1094.5) challenging the actions of the local personnel board and the city council. The plaintiff sought reinstatement, backpay, benefits, and compensatory and punitive damages. The trial court granted summary judgment for the city on the ground of laches, and the Court of Appeal affirmed. (*Johnson, supra,*. 24 Cal.4th at pp. 65–67.)

We unanimously affirmed the judgment of the Court of Appeal in *Johnson,* holding that, "when . . . a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA." (*Johnson, supra,* 24 Cal.4th at p. 76.) We reasoned that to permit the plaintiff to abandon the internal grievance process without exhausting available judicial remedies would "undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation." (*Id.* at p. 72.)

*Johnson* therefore stands for the proposition that where a public employee invokes his or her employer's internal grievance procedures, the employee must pursue and perfect that process, and timely seek judicial mandamus review from any adverse decision, as a precondition to filing an FEHA-based action in superior court. *Johnson*'s exhaustion of *judicial remedies* rule serves to preserve the integrity of the employer's internal grievance procedures.

A similar holding here respecting the exhaustion of available internal *administrative remedies* would serve the same purpose and goal. Instead, under the majority's holding today, the spirit, if not the letter of our decision in *Johnson* has been gutted. Given *Johnson*'s requirement that an employee pursue and perfect the internal grievance process *through the final stage of judicial mandamus review* as a precondition to filing an FEHA-based discrimination action in superior court, and given that, under the majority's

holding in this case, a similarly situated employee will be free to bypass the internal administrative grievance procedure altogether and directly file suit after requesting and receiving a right-to-sue letter from the Department, few if any employees will have the financial incentive, or the tenacity, to choose the route of conciliation, possible settlement, or mitigation of damages over the shortcut straight to court.

Last, the majority's holding today exempting all FEHA plaintiffs from their obligation to exhaust internal administrative remedies before going to court is patently at odds with our unanimous decision filed just one week ago in *State Department of Health Services v. Superior Court* (2003) 31 Cal.4th 1026 [6 Cal.Rptr.3d 441, 79 P.3d 556] (*State Department of Health Services*). That case involved the provisions of the FEHA prohibiting sexual harassment in the workplace. The issue in *State Department of Health Services* was whether, under the FEHA, an employer is strictly liable for hostile environment sexual harassment by a supervisor, and whether the damages a plaintiff may recover from the employer in such a case include damages that the plaintiff could have avoided by reporting incidents of harassment to the employer. We held that an employer is strictly liable under the FEHA for sexual harassment by a supervisor. (*Id.* at p. 1034.) We further concluded that, "the avoidable consequences doctrine applies to damage claims under the FEHA, and . . . under that doctrine a plaintiff's recoverable damages do not include those damages that the plaintiff could have avoided with reasonable effort and without undue risk, expense, or humiliation." (*Ibid.*)

We explained in *State Department of Health Services* that, "The avoidable consequences doctrine is well established and broadly applied, and nothing in the FEHA's language and structure indicates that the Legislature intended to abrogate this fundamental legal principle. On the contrary, failure to apply the avoidable consequences doctrine to FEHA sexual harassment claims could undermine a basic goal of the FEHA—to make employers the first line of defense against sexual harassment in the workplace. A rule making employers liable even for those damages that an employee could have avoided with reasonable effort and without undue risk, expense, or humiliation would significantly weaken the incentive for employers to establish effective workplace remedies against sexual harassment." (*State Department of Health Services, supra,* 31 Cal.4th at p. 1034.)

Similar to the purpose served by the doctrine of avoidable consequences, the rule requiring exhaustion of internal administrative remedies makes employers, and in the case of public entity employers, their civil service commissions, the first line of defense against employment discrimination practices in the workplace. As explained above, the exhaustion of internal remedies requirement gives the administrative body with jurisdiction over a

claim an opportunity to redress the claimed wrong, or possibly mitigate the claimant's damages, short of costly litigation in the courts. (*Sierra Club v. San Joaquin Local Agency Formation Com., supra,* 21 Cal.4th at p. 501.) It oftentimes will lead to the most prompt and economical means of resolving disputes, and even where complete relief is not obtained, it can serve to reduce the scope of litigation or possibly avoid it altogether. (*Rojo, supra,* 52 Cal.3d at p. 86.) And where litigation proves unavoidable, the exhaustion rule affords the agency or entity implicated in the claim an opportunity to apply its expertise, ensure the development of a complete factual record, and assist or help focus the subsequent judicial review process. (*Sierra Club, supra,* 21 Cal.4th at p. 501.)

To my mind, the analogy between the purposes served by the doctrine of avoidable consequences and the rule requiring exhaustion of internal administrative remedies is striking, and the disparity between the holdings reached by a majority of this court in *State Department of Health Services* and this case—decisions filed just one week apart—equally as baffling. Had plaintiff here timely and promptly pursued the city's internal grievance procedures, the result could have been drastically different for both parties. The city's Board of Civil Service Commissioners might have found the city responsible for plaintiff's supervisor's actions and directed the city to reinstate plaintiff with backpay. Although we are not here in a position to pass judgment on the merits of plaintiff's claim, the point is simply that had plaintiff pursued his internal remedy with the city as required by law until today, both plaintiff and the city might have settled this matter amicably and avoided costly and burdensome litigation altogether. Instead, under the majority's holding, the road to possible conciliation, amicable settlement, or mitigation of damages will first have to pass through the courthouse.

For all of these reasons, I respectfully dissent.

Brown, J., concurred.

On December 23, 2003, the opinion was modified to read as printed above.